JOHN BEATTIE et al., as Executors and Trustees under the Will of JOHN BEATTIE, Deceased, Respondents, *v.* THE NEW YORK AND LONG ISLAND CONSTRUCTION COMPANY, Appellant.

Contract — sale — when actual cost of article to be delivered, not contract price, is measure of damages, upon purchaser's refusal to complete contract — offsets to such damages — evidence.

The owner of granite quarries agreed to furnish a contractor granite of unusual dimensions for the foundations of bridge piers, at a certain price, which was much less than the cost of getting out the stone contracted for, upon the consideration that the quarry owner should have the contract for all of the granite required for the piers. It was also agreed that if for any reason the piers should not be constructed, the quarry owner should be "only paid for granite actually delivered and cost of balance quarried and cut." After part of the stone for the foundations had been quarried and cut, some of which had been delivered and paid for, the work was abandoned. Thereupon the owner of the quarry demanded from the contractor payment of the expense incurred in quarrying and cutting stone not delivered. This was refused and in this action against the contractor, *held*, (1) that, under the terms of the contract, the actual cost of quarrying and cutting the undelivered stone, and not the contract price thereof, is the measure of damages; and (2) that the defendant is not entitled to set off against such damages the value of the stone quarried and cut which still remains in the quarries.

After the abandonment of the work by the defendant, plaintiff sold part of the stone so remaining. *Held*, that the defendant is entitled to be credited upon the damages recovered by plaintiff with the profit made by plaintiff on such sale, since his damages were diminished to this extent.

The contract in question is evidenced by a letter written by the plaintiff and approved by the defendant, which speaks so clearly of a contract yet to be made, and of acts already done by plaintiff, as to leave no room for doubt that the parties had acted in anticipation of reducing their contract to writing when it should become more certain just what the instrument should embody. Hence, parol evidence, not inconsistent with the letter, was admissible to show what the whole contract was. It was proper, therefore, to receive evidence that defendant's engineer had visited plaintiff's quarries, and of what was there said and done in his presence with reference to the opening of the quarries for the express purpose of enabling the plaintiff to fulfill his contract with the defendant.

At the time work on the piers was abandoned plaintiff had, lying in scows alongside the piers, a quantity of stone which the defendant refused to receive, although it had been formally inspected and accepted by defendant's engineer. *Held,* that a finding that defendant had paid "all moneys due under the contract for stone delivered by him (plaintiff) to the defendant thereunder" relates to stone actually delivered, and does not embrace this item, as to which there was an attempted delivery, but also refusal to receive; and hence, that there was no accord and satisfaction as to this stone.

*Beattie* v. *N. Y. & L. I. Construction Co.,* 127 App. Div. 923, modified.

(Argued October 29, 1909; decided November 9, 1909.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 18, 1908, affirming a judgment in favor of plaintiffs entered upon the report of a referee.

On the 7th day of December, 1894, John Beattie, the plaintiffs' testator, and Lynde Harrison of New Haven, Connecticut, were the owners of granite quarries situate at Leetes Island upon Long Island Sound in the state of Connecticut. On that day they entered into a contract with the defendant, partly evidenced by a letter which reads as follows:

> "NEW HAVEN, CONN.,
> "*December* 7, 1894.

"MR. C. M. JACOBS, C. E.:

"DEAR SIR.— Mr. John Beattie and myself are now engaged in preparing for the New York and Long Island Bridge at Blackwell's Island, about 5,000 yards of granite for the lower courses of the piers. These are to be furnished at

10.50 per yard under the agreement made with yourself and
Mr. Corbin a few weeks ago.

"We are almost ready to begin details for the remainder of
the granite required under the specifications furnished for the
piers required for the Bridge, on the terms given you by Mr.
Northrup, acting as our agent; 10.50 per yard for all stone
required, and a charge of 50 cents a foot extra for the axed
work that may be ordered; the contract to be made with the
N. Y. & L. I. Construction Company, and signed as soon as
prepared. In the meantime we will go on with the work; it
being understood that we have agreed to furnish the 5,000
yards named at the very low price named, in consideration of
our having the contract with the Construction Co. for the
entire granite required for the piers. *It is understood that
if for any reason the piers should not be constructed, we are
only paid for granite actually delivered and cost of balance
quarried and cut.*

"(Signed)   LYNDE HARRISON.

"for myself and as Att'y for John Beattie.

  "O. K.

  "A. C."

The "C. M. Jacobs, C. E.," to whom it was addressed, was
a civil engineer employed by the defendant to prepare plans
and specifications for a bridge across the East river at Black-
well's Island, and to superintend its construction. The initials
"A. C." at the lower left-hand corner of this letter are the
initials of Austin Corbin, who was then the president of the
defendant. As appears from this letter, the writers thereof
were then engaged in quarrying and cutting for the defendant
about five thousand yards of granite to be used in the lower
courses of the piers, which were to form the substructure of
said bridge. The price for this stone was fixed at $10.50 per
yard, upon the understanding that the writers of the letter
were to have the contract with the defendant for furnishing
all the granite to be used in the construction of the piers.
The record discloses that at that early day it was anticipated
that contingencies might arise which would necessitate the

abandonment of the work, and to provide against them there was inserted in the contract the provision that if for any reason the piers should not be constructed, the defendant should only pay for granite actually delivered "and cost of balance quarried and cut."

After the contract had been entered into and before the commencement of work upon the piers, Harrison assigned his interest in the contract to Beattie, the plaintiffs' testator. Later still, and in 1899, Beattie died, leaving a will in which the plaintiffs were named as executors. For convenience we will refer to the plaintiffs as parties to the contract with the defendant.

The lower courses for the piers, embraced in the first five thousand yards to be furnished, were to be of unusal size and weight, and the plaintiffs found it necessary to open two new quarries to procure them. The defendant, through Mr. Jacobs, its engineer, visited the quarries before the contract was made and fully understood that in view of the expense and labor involved in the opening of these quarries the price of $10.50 per yard was much less than the cost of getting out the first five thousand yards of granite, and that it was an average price based upon the prospect that all the granite required for the piers, much of which would be of smaller dimensions and more easily quarried, would be taken from these quarries.

From December 7, 1894, when the contract was made, until October 25, 1895, when the work was abandoned by the defendant, the plaintiffs continued the work of quarrying and cutting granite for the piers.

During the progress of the work the plaintiffs had delivered granite which was set in piers three and four, for which they had received payments in various installments amounting to the sum of $32,840.72, the last payment being made February 23rd, 1897. When this last payment was made the defendant took from the plaintiffs a receipt which covered only the stone actually set in the piers, with the exception of $566.39, which was for certain axed work, pene hammered

work, and for allowances under arbitrary measurements contained in the specifications for the spaces occupied by the mortar between the courses of stone. No work was ever done upon pier one ; a portion of the foundation work on pier two was done by the defendant, but it never progressed far enough to permit the laying of granite. In October, 1895, the plaintiffs had prepared and delivered on scows alongside the piers on Blackwell's Island a quantity of stone which included about two hundred yards of backing which was quarried and cut expressly for these piers and which had been inspected and accepted by the defendant at the quarries. This the defendant refused to receive and the plaintiffs were compelled to reship it to Leetes Island and there unload it.

On October 25, 1895, when the contract was abandoned by the defendant, the plaintiffs had also quarried and cut, in execution of this contract, 1,295.17 cubic yards of stone for the piers, of which 549.78 yards were face stone, and 745.39 cubic yards were backing stone. The greater part of this had been fully cut and ready for shipment. The plaintiffs, when advised of the defendant's abandonment of the work, caused to be measured all of the stone quarried and cut but not delivered, and then stopped further work under the contract. After the work was thus stopped, the plaintiffs demanded of the defendant payment of the expense incurred in the quarrying and cutting of stone not delivered. In March, 1897, the defendant sent its engineer to the quarries of the plaintiffs, who was then furnished with a list of the measurements made. The engineer examined the stone but only marked as accepted about 537 yards. After the abandonment of the work by the defendant in 1895, the plaintiffs sold 356 yards of the face stone for use in the construction of a bridge in the city of Hartford, Connecticut, for which they received the gross price of $5,314.40. They had incurred expenses in connection therewith for recutting, freight and commissions to the amount of $2,605.49, leaving a net profit of $2,708.91. The cost to the plaintiffs for quarrying and cutting the 1,295.17 yards of stone not delivered was proved to have been $16.80

per cubic yard, making a total of $21,758.85, and this was
predicated upon the fact that it was cut for the heavy lower
courses, which were much more expensive than the remaining
courses, and upon the cost of opening new quarries. The
whole amount of stone thus quarried and cut but not deliv-
ered, with the exception of 356 yards sold for the construc-
tion of the bridge at Hartford, remains in the quarry of the
plaintiffs. The defendant insisted upon the right to offset
against the plaintiffs' claim the value of the stone thus left in
the latter's possession, as well as the net profit realized in the
sale for the Hartford bridge, but it was not allowed by the
referee, and the plaintiffs recovered judgment for $24,442.05,
with interest amounting to $1,897.70, making a total of
$26,339.75. From this judgment the defendant appealed to
the Appellate Division, where it was unanimously affirmed.

*James W. Treadwell* and *Joseph F. Keany* for appellant.
The referee erred in admitting evidence of oral statements
made by Beattie to Jacobs at the quarries before the written
contract was made, and in construing the contract in the
light of those prior statements. (*Thomas* v. *Scutt,* 127 N. Y.
133; *Dady* v. *O'Rourke,* 172 N. Y. 447; *McGarrigle* v.
*McCosker,* 83 App. Div. 184; 178 N. Y. 637; *Stowell* v.
*G. Ins. Co.,* 163 N. Y. 298; *U. P. Co.* v. *N. Y. P. Co.,*
164 N. Y. 406; *Brantingham* v. *Huff,* 174 N. Y. 53;
*Waldron* v. *Fargo,* 52 App. Div. 18.) The referee erred in
his construction of the written contract. (*Galle* v. *Tode,* 148
N. Y. 270; *Morehouse* v. *B. H. R. R. Co.,* 185 N. Y. 520;
*Le Gendre* v. *S. Ins. Co.,* 183 N. Y. 392; *Arnot* v. *U. S. Co.,*
186 N. Y. 501; Code Civ. Pro. § 1023; *Alcock* v. *Davitt,*
179 N. Y. 9; *Smyth* v. *B. U. R. R. Co.,* 193 N. Y. 335;
*People* v. *Most,* 171 N. Y. 423; *Dougherty* v. *L. F. Ins. Co.,*
183 N. Y. 302; *Miller* v. *N. Y. R. Co.,* 183 N. Y. 123.)
The referee erred in allowing recovery for the 200 yards of
backing stone. As to this stone, the findings show that the
defense of accord and satisfaction, pleaded in the answer, was
fully made out. (*Parsons* v. *Parker,* 159 N. Y. 16; *Nassoiy*

v. *Tomlinson,* 148 N.Y. 326 ; *Fuller* v. *Kemp,* 138 N. Y. 231 ; *Lewison* v. *M. T. Co.,* 60 App. Div. 572 ; *Simons* v. *American Legion,* 178 N. Y. 263 ; *Goodrich* v. *Sanderson,* 35 App. Div. 546 ; *Vosburgh* v. *Teator,* 32 N. Y. 561 ; *Sears* v. *Grand Lodge,* 163 N. Y. 374 ; *Nickell* v. *Tracy,* 184 N. Y. 386.)

*L. Laflin Kellogg* and *Alfred C. Petté* for respondents. The contract entered into expressly provided for payment by the defendant, in case of the discontinuance of the work, of the cost of the undelivered stone quarried and cut, and was properly construed as entitling the plaintiffs to the actual outlay and expense incurred in quarrying and cutting same. (*Tremaine* v. *Hitchcock,* 90 U. S. 158 ; *Cutter* v. *G. B. Co.,* 190 N. Y. 252.) No error was committed in the reception in evidence of testimony showing the facts and surrounding circumstances attending the execution of the contract. (*Blossom* v. *Griffin,* 13 N. Y. 569 ; *Springsteen* v. *Lawson,* 32 N. Y. 703 ; *Knapp* v. *Warner,* 57 N. Y. 668 ; *Clark* v. *N. Y. L. Ins. & T. Co.,* 64 N. Y. 33 ; *Coleman* v. *Beach,* 97 N. Y. 545 ; *Smith* v. *Kerr,* 108 N. Y. 31 ; *Middleworth* v. *Ordway,* 191 N. Y. 404 ; *H. T. B. Co.* v. *C. S. Ry. Co.,* 72 Fed. Rep. 317 ; *Sweet* v. *Henry,* 175 N. Y. 268.) No error was committed in holding that as to the 200 yards of backing stone there had been no accord and satisfaction which precluded recovery. (*E. V. B. Co.* v. *Prosser,* 157 N. Y. 289 ; *Komp* v. *Raymond,* 175 N. Y. 102 ; *Laroe* v. *S. L. Dairy Co.,* 180 N. Y. 367 ; *B. M. Co.* v. *B. H. I. Co.,* 58 App. Div. 66.)

Werner, J. The unanimous affirmance by the Appellate Division of the judgment recovered by the plaintiffs, limits our right of review to the rulings upon evidence made at the trial, and the legal conclusions adopted by the referee. Although the case as thus narrowed is extremely simple, it is characterized by a few remarkable features which serve to give it an air of complexity. The first thing worthy of

notice is the evident lack of attention to detail in the formulation and execution of a contract having to do with a large and important subject. The defendant had undertaken to build a great bridge over the East river at Blackwell's Island. The work was commenced under conditions which rendered it practically certain that serious legal obstacles would be encountered which might, and as the sequel shows did, prove fatal to the enterprise. Despite these conditions, the only writing which evidences the contract between the parties is a letter written to the defendant's engineer by the plaintiffs' predecessor in title. The three most prominent features of this letter are : (1) That it was written in anticipation of a more formal contract which was later to be executed ; (2) that the contract price of $10.50 per yard for the stone to be furnished was a low average price based upon the prospect of furnishing all the stone for the whole work, and (3) that the work was commenced with a view to its possible abandonment before completion, in which event the measure of the plaintiffs' compensation was to be the contract price for stone actually delivered, and the cost of quarrying and cutting stone not delivered.

As appears from the foregoing statement of facts, no formal written contract was entered into after the letter of December 7, 1894, was written ; the work was abandoned before completion ; the plaintiffs had quarried and cut a large quantity of stone which they were not permitted to deliver ; and for the stone quarried and cut but not delivered they recovered a sum largely in excess of the contract price for that which was delivered. At first glance this appears to be an incongruous result, but a study of the case shows that if the contract was correctly construed by the learned referee and no improper evidence was admitted as to the measure of damages, that result is not only logical but necessary. The plaintiffs were in a peculiar position. They had agreed to furnish an initial five thousand yards of granite of unusual dimensions, which necessitated the opening of new quarries and the quarrying of a vast amount of stone, some of which would not be suitable for any of the work, and much of which could

23

only be used after the large dimension blocks had been delivered and set in place.    The contract price of the large blocks was much less than the cost of production, and the plaintiffs' only hope of a profit lay in the completion of the whole contract, in which event the contract price would have been a fair average one.    But, underlying these considerations, there was the fundamental fact that the work might have to be abandoned at a time when the plaintiffs had quarried and cut a large quantity of stone which had not been delivered, and which, under the express terms of the contract, the defendant was under no obligation to accept.    It is obvious that in such circumstances the contract price might not equal the cost of production, and that is what actually happened.    The referee construed the contract to mean that, as to the stone quarried and cut but not delivered, the actual cost of production, and not the contract price, was the measure of damages which the plaintiffs were entitled to recover.    As to that we think. he was right.    The clause of the contract "It is understood that if for any reason the piers should not be constructed, we are only paid for granite actually delivered, *and cost of balance quarried and cut*," is meaningless unless thus construed, and when read in the light of the attendant circumstances it clearly indicates the intention of the parties to provide for a contingency in which the contract price would be an wholly inadequate measure of damages.    Counsel for appellant contends that "cost of balance quarried and cut" means the contract price less freight and profit.    The answer to the contention is that all the parties understood that there could be no profit unless there should be a substantial completion of the whole contract.    It is true that under the judgment the defendant is compelled to pay more for stone which it never received and to which it acquired no title, than it paid for stone actually delivered.    That is not the fault of the law. It is due wholly to a peculiar but specific provision in the contract.    Cost, not contract price, was the measure of damages adopted by the parties as to stone quarried and cut, but not delivered.    In this connection we have still to consider, however,

whether the proper method was employed in ascertaining the cost. Without going into the voluminous details of the evidence bearing upon this subject, it is enough to say that a separate account was kept of the expense of working the two new quarries which were necessarily opened for the production of the stone which the plaintiffs were to furnish. This showed the expense of quarrying and cutting to have been $16.80 per cubic yard. By multiplying that price by the number of yards quarried and cut for this work, but not delivered, the referee found the total of defendant's liability for that item. Although this may seem to be a harsh result, no other method is suggested by which a more just and logical result could be arrived at. The method employed seems to have been not merely the best, but the only one by which the plaintiffs' loss could have been ascertained. As to this branch of the case it is also urged by counsel for the appellant that incompetent testimony was admitted by the referee, which varied the terms of the written contract, and he cites *Stowell* v. *Greenwich Ins. Co.* (163 N. Y. 298) and other similar cases in support of his contention. The cases referred to clearly state the law of this jurisdiction, but we think they have no application to the case at bar. This is not a complete and unambiguous written agreement constituting the final respository of all the stipulations between the parties. It falls rather within the classification represented by *Thomas* v. *Scutt* (127 N. Y. 133), in which it was held that when a written instrument is obviously not a complete contract, parol evidence, not inconsistent with the writing, may be given to show what the whole contract is. That is precisely the case at bar, for the letter referred to so clearly speaks of a contract yet to be made, and of acts already done by the plaintiffs, as to leave no room for doubt that the parties had acted in anticipation of reducing their contract to writing when it should become more certain just what the instrument should embody. In these conditions it was, we think, entirely proper for the referee to receive evidence of the engineer's, Jacobs, visit to the quarries, and of what was said and done in his presence with reference to the

opening of the quarries for the express purpose of enabling the plaintiffs to fulfill their contract with the defendant.

We think there was no accord and satisfaction as to the 200 yards of backing, which the plaintiffs attempted to deliver, and the defendant refused to receive, although it had been formally inspected and accepted by defendant's engineer. There is nothing in the findings to establish an accord and satisfaction as to this item. The finding to the effect that the defendant had paid "all moneys due under the contract for stone delivered by him (Beattie) to the defendant thereunder," relates to stone actually delivered and does not embrace this item, as to which there was an attempted delivery, but also a refusal to receive.

Many other questions are urged upon our attention by counsel for appellant, but none of them seem to require discussion except the one relating to defendant's asserted right of set-off. That question presents the only error of sufficient importance to justify our interference with the judgment as it stands. We do not agree with the defendant in so far as it claims the right to set off against the plaintiffs' damages the value of the stone quarried and cut but not delivered which still remains in the quarries. As to that there was no transmission of title and no proof of value. Hence there was no basis for the set-off. That is all that need be said about it. A different question arises as to the stone which was recut and sold for the Hartford bridge. It was the duty of the plaintiffs to exercise all reasonable means to reduce, or at least not unnecessarily to enhance, their damages. When they sold for use upon the Hartford bridge a portion of the stone left on their hands by the defendant, their damages were diminished to the extent of the profit which they made on the Hartford contract. If the defendant is not credited with this amount the plaintiffs will be receiving double payment for the same thing. This naked statement of that feature of the case is enough to show that the learned referee was in error in not allowing the defendant's offset to the extent of the plaintiffs' profit on the Hartford contract.

Although this was error it does not require or justify a reversal of the judgment, for it can be remedied by a simple modification. The profit to the plaintiffs on the Hartford contract was $2,708.91.

As no interest was allowed by the referee upon the item in which the Hartford stone was included, the net profit referred to is the amount by which the judgment should be reduced, and, as thus reduced, affirmed, without costs to either party in this court.

CULLEN, Ch. J., GRAY, VANN, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment accordingly.