Howard FARMER, Plaintiff-Appellant,

v.

ARABIAN AMERICAN OIL COMPANY (a Delaware corporation), Defendant-Appellee.

No. 170, Docket 25854.

United States Court of Appeals Second Circuit.

Argued Jan. 15, 1960.

Decided April 6, 1960.

Kalman I. Nulman, New York City (William V. Homans, New York City, on the brief), for plaintiff-appellant.

Chester Bordeau, of White & Case, New York City (William D. Conwell, of White & Case, New York City, on the brief), for defendant-appellee.

Before CLARK, HINCKS, and WATERMAN, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from a defendant's judgment in an action for damages for breach of a contract of employment. The action was originally instituted in the New York Supreme Court and was removed to the court below, the parties being citizens of different states.

Plaintiff, a physician specializing in the practice of ophthalmology, initially contacted defendant by letter in response to an advertisement offering foreign employment. Defendant is a major oil company with extensive operations in the Middle East. Mr. A. B. Brautovich, "recruiting representative" for defendant, informed plaintiff that a position was available in Saudi Arabia, forwarded the appropriate application forms, and arranged for plaintiff's trip to New York for a personal interview. Plaintiff was interviewed by Dr. T. E. Allen, defendant's associate medical director, in charge of the company's medical affairs in the United States. Following this interview, Dr. Allen was in touch with plaintiff on several occasions in connection with pre-employment processing. Upon completion of these preliminaries Dr. Allen extended a definite offer of employment to plaintiff via telephone on April 13, 1955. Plaintiff accepted this offer and did not subsequently discuss the terms of employment with any of defendant's representatives. The formal offer of employment was confirmed by letter from the Personnel Department dated April 13, 1955. This letter did not recite the terms of employment, but dealt pri-

marily with travel arrangements.[1] It is agreed that plaintiff signed and returned the post card of confirmation as therein requested.[2] And pursuant to these instructions plaintiff reported to defendant's New York office on May 26, the day before his scheduled departure, to complete processing. Here he was instructed by various employees of defendant to complete a number of forms. These included a group insurance form, a hospital medical plan form, and a salary allotment form, as well as other miscellaneous papers. Among these was a form which plaintiff characterizes as a "workmen's compensation agreement," but which defendant claims as the "employment agreement." [3]

Plaintiff duly arrived in Saudi Arabia on May 30, 1955, and performed his duties at defendant's hospital until his discharge on February 5, 1956. As a

consequence plaintiff instituted this action for damages for wrongful discharge. He contends that under the oral agreement of April 13 his term of employment was the duration of defendant's operation of its oil wells in Saudi Aribia. Defendant's position is that the employment was at will pursuant to the "employment agreement" of May 26. Defendant also asserts that plaintiff was an unsatisfactory employee, while plaintiff maintains that no proper cause for his discharge existed. After trial the jury was unable to reach agreement and was discharged. The court thereupon entered judgment for defendant in accordance with its motion for a directed verdict. Fed.R.Civ.P. 50(b). In his decision, D.C.S.D.N.Y., 176 F.Supp. 45, Judge Palmieri relied upon three independent grounds for the result he reached: Parol evidence was inadmissi-

1. The body of this letter—addressed to Dr. Farmer at 409 W. 15th Street, Austin, Texas, and signed by A. T. Wisner, Assistant Manager, for G. A. Wood, Manager, Personnel Department—is as follows:

"This will confirm our offer of employment.

"You are scheduled to depart for Saudi Arabia by international air flight departing New York on May 27, 1955. Please arrange domestic transportation to permit you to report at 9:00 a.m., May 26th, at our office on the 7th floor, 505 Park Avenue, New York City for processing.

"You may present this letter to the domestic airline for clearance of the 66 pounds international baggage allowance.

"It is imperative that you have your inoculation certificate with you.

"Please confirm your acceptance of this formal offer of employment and advise us arrival time in New York. The enclosed post card may be used for this purpose.

"Upon receipt of your confirmation, we will forward $21.00 New York expense allowance and $123.10 transportation allowance from Austin, Texas to New York. Should you desire, we shall also obtain reservations for you at the Park Sheraton Hotel. Should your arrival subsequently be delayed, please advise the hotel of such delay direct."

2. The card contained the statements:
"Employment offer accepted.
"Will report as scheduled for processing and departure. I will have my innoculation [sic] record with me."

3. This document, on the defendant's letterhead, entitled, "Employment in Foreign Service," is addressed to Dr. Farmer, Austin, Texas, is signed in the name of defendant by J. H. McDonald, and is marked "Accepted: Howard Farmer, Employee's Signature, Date: May 26, 1955."

The body of the document—which is a printed form with insertions as shown by the underlined material—is as follows:

"This will confirm our offer of employment in the Company's Foreign Service to be effective on May 22, 1955.

"Your annual rate of basic earnings will be U. S. $16,000.00.

"Your initial job classification will be Ophthalmologist.

"Benefits as provided in the New York Workmen's Compensation Law shall constitute the Company's entire liability and your exclusive remedy against the Company in the event of your disability or death whether arising out of or in the course of your employment or resulting from the use of transportation facilities operated by or for the Company.

"Will you please confirm your acceptance of this offer by signing and returning two copies of this letter to us."

ble to vary the terms of the May 26 agreement; the alleged oral agreement was void under the statute of frauds; and Dr. Allen lacked authority to offer employment for the term alleged. The parties agree that these issues are to be determined by the law of the State of New York. We shall discuss each one in turn.

### The Parol Evidence Rule

 The court below held that, since the contract was set forth in writing in the "employment agreement" of May 26, 1955 (note 3 supra), evidence of a prior oral agreement was inadmissible. But we do not see how this conclusion is possible in view of the well settled rule that in order for all prior negotiations to be completely embodied in a written agreement the parties must intend such integration and that evidence *dehors* the writing is freely admitted to determine such intent. And here the evidence seems wholly clear that the parties did not visualize the truncated document of May 26 as embodying all the agreement between the plaintiff and the company.

 "When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing. This is in substance what is called the 'parol evidence rule,' a rule that scarcely deserves to be called a rule of evidence of any kind, and a rule that is as truly applicable to written evidence as to parol evidence. The use of such a name for this rule has had unfortunate consequences, principally by distracting the attention from the real issues that are involved. These issues may be any one or more of the following:

(1) Have the parties made a contract? (2) Is that contract void or voidable because of illegality, fraud, mistake, or any other reason? (3) Did the parties assent to a particular writing as the complete and accurate 'integration' of that contract?

"In determining these issues, or any one of them, there is no 'parol evidence rule' to be applied. On these issues, no relevant evidence, whether parol or otherwise, is excluded. * * * No one of these issues can be determined by mere inspection of the written document." 3 Corbin on Contracts § 573 (1951), and see § 582 collecting cases of "Evidence That the Writing Was Not Assented to as a Complete and Accurate Integration"; 9 Wigmore, Evidence §§ 2425, 2429 (3d Ed. 1940); 1 Restatement, Contracts § 228 (1932); United States Navigation Co. v. Black Diamond Lines, 2 Cir., 124 F.2d 508, 510, certiorari denied Black Diamond Lines v. United States Navigation Co., 315 U.S. 816, 62 S.Ct. 805, 86 L.Ed. 1214; Caputo v. Continental Const. Corp., Mass., Dec. 7, 1959, 162 N.E.2d 813, 816; Lawrence v. Tandy & Allen, Inc., 14 N.J. 1, 100 A. 2d 891; Jarvis v. Cunliffe, 140 Conn. 297, 99 A.2d 126; Rinaudo v. Bloom, 209 Md. 1, 120 A.2d 184. The New York law is in accord. Chapin v. Dobson, 78 N.Y. 74, 79; Beattie v. New York & L. I. Const. Co., 196 N.Y. 346, 349, 89 N.E. 831; Dickinson v. Dickinson, 273 App.Div. 1055, 79 N.Y.S.2d 833. A closely analogous case is Leifer v. Scheinman, 179 App.Div. 665, 167 N.Y.S. 105, where the writing dealt with the salary to be paid plaintiff, but not with his duties or the term of employment; in a suit for wrongful discharge he was allowed to show that the hiring was for a year.[4] This case has recently been quoted with approval by the New York

---

4. The court below believed this case was overruled by Miller v. Burlington Mills Ribbon Corp., 278 App.Div. 854, 104 N.Y.S.2d 484, affirmed without opinion 304 N.Y. 600, 107 N.E.2d 88. See D.C. S.D.N.Y., 176 F.Supp. 45, 49, note 8.

But it is not even cited in the Miller case, which concerned another issue, namely, an insufficient memorandum to satisfy the statute of frauds—an issue determined on the face of the pleadings without question of evidence.

Court of Appeals, Laskey v. Rubel Corp., 303 N.Y. 69, 72, 100 N.E.2d 140.

In the present case there is nothing to show that the parties intended an integration of their negotiations in the printed form of May 26, 1955; in fact, the contrary is strongly indicated. The recital of facts above showing a whole series of telephonic, written, and oral negotiations, with several statements of confirmed offer duly accepted, contains nothing to suggest an intent eventually to integrate the acceptances into some formal document. Quite obviously the parties proceeded on the basis that no writing was needed to complete the agreement. So a contract was made as early as the letter of April 13. The later document of May 26 is quite lacking in any normal terms of employment, including place and time and duration of employment, manner and time of payment, nature of occupation, and the like. And the plaintiff's testimony—which is not challenged on this issue—is that he was informed by an employee of defendant that it was merely a routine form involving workmen's compensation rights. The nature of the form suggests this conclusion. We think it therefore beyond dispute that there was no integration of the agreement so as to prevent resort to parol evidence of its terms.[5]

### The Statute of Frauds

Whether an oral agreement for the duration of defendant's oil operations in Saudi Arabia is void under the statute of frauds, N.Y.Pers.Prop.Law § 31, poses a more troublesome question in view of the New York cases. Initially it would appear that, since the expressed contingency might occur within a year, the agreement is capable of performance within this period and thus does not fall within the statute. See 2 Corbin on Contracts § 446 (1950). And this is true even on the plaintiff's testimony that he felt himself obligated to remain in defendant's employ for a reasonable period of time, perhaps five years. But several recent decisions of the New York Court of Appeals have created some uncertainty in respect to this principle. This uncertainty is reflected in the fact that the judgment appealed from is contrary to an earlier decision by Judge Weinfeld denying defendant's second pretrial motion for summary judgment based on its claim as to the statute of frauds.

Defendant relies, as did the court below, upon Zupan v. Blumberg, 2 N.Y.2d 547, 161 N.Y.S.2d 428, 141 N.E.2d 819; Martocci v. Greater New York Brewery, 301 N.Y. 57, 62–63, 92 N.E.2d 887, 889; and Cohen v. Bartgis Bros. Co., 264 App.Div. 260, 35 N.Y.S.2d 206, affirmed without opinion 289 N.Y. 846, 47 N.E. 2d 443. See also Droste v. Harry Atlas Sons, 2 Cir., 145 F.2d 899, rehearing denied 2 Cir., 147 F.2d 675, certiorari dismissed 325 U.S. 891, 65 S.Ct. 1408, 89 L.Ed. 2003. Each of these cases involved an agreement to pay commissions on all future orders received from customers initially solicited by the agent. Thus the contractual relationship between the parties was by its terms permanent, even though the principal's liability was contingent upon the receipt of such future orders. Martocci v. Greater New York Brewery, supra, 301 N.Y. 57, 92 N.E.2d 887.[6] By contrast, the con-

5. Since evidence of intent to integrate is so wholly lacking we need not discuss the question whether this is an issue for the court or jury. On motion for summary judgment Judge Noonan had ruled that it was a jury question; and it was so submitted at the trial which failed because the jury did not agree. Earlier it had been held an issue for the court. Seitz v. Brewers' Refrigerating Machine Co., 141 U.S. 510, 517, 12 S.Ct. 46, 35 L.Ed. 837; Watkins Salt Co. v. Mulkey, 2 Cir., 225 F. 739; see McCormick on Evidence §§ 215, 216 (1954); and cf. Braxton v. Mendelson, 233 N.Y. 122, 124, 135 N.E. 198.

6. It should be noted that Professor Corbin's criticism of recent New York cases is not so much of their law as of their failing to see that as a *fact* more contracts than they have assumed *may* be performed within one year. Thus a contract to employ X "as long as he lives"

tractual relationship herein involved did not extend beyond the defendant's operations in Saudi Arabia when, according to the plaintiff's testimony, the contract was to terminate.

It is urged, however, that in each of the above cited cases the relationship would be terminated by the dissolution of the principal's business. In reply to a similar argument the New York Court of Appeals noted that such termination would constitute destruction of the contract, rather than performance, since the agreement contained "no provision authorizing either or both of the parties to terminate as a matter of right." Zupan v. Blumberg, supra, 2 N.Y.2d at page 550, 161 N.Y.S.2d at page 429, 141 N.E.2d at page 820, citing the leading case of Blake v. Voigt, 134 N.Y. 69, 31 N.E. 256. Since plaintiff herein testified that defendant's obligation was expressly limited to the duration of its oil operations in Saudi Arabia, we find Blake v. Voigt controlling, so that the alleged oral agreement falls without the statute. See Krawitz v. Gross, Sup., 156 N.Y.S.2d 576; Platt v. Whitelawn Dairies, Inc., 3 Misc.2d 19, 150 N.Y.S.2d 391, affirmed 2 A.D.2d 683, 153 N.Y.S.2d 583; Comments, 27 N.Y.U.L.Rev. 863 (1952), 16 Fordham L.Rev. 95 (1947). See also Gruber v. S-M News Co., 2 Cir., 208 F.2d 401; Nat Nal Service Stations v. Wolf, 304 N.Y. 332, 107 N.E. 2d 473; Kagan v. Gair, 20 Misc.2d 632, 194 N.Y.S.2d 197.

Defendant asserts that the express inclusion of such a condition is insignificant, since it would be implied in any event. We share defendant's distaste for verbal niceties, but we must recognize that such a distinction is not a unique one in determining the scope of the statute of frauds, which refers to the "terms" of the contract. Compare the similar distinction generally drawn between employment for life and for a term of years. 2 Corbin on Contracts §§ 446, 447 (1950). The statute of frauds,

*can* be performed within one year *Deo volente*, while a contract to work 20

as applied to such a contract as this, where plaintiff had performed for many months, is an anachronism in modern life and we are not disposed to expand its destructive force. 2 Corbin on Contracts § 444 (1950).

### Dr. Allen's Authority to Contract

Defendant's position, adopted by the court below, is that the alleged contract, under which plaintiff might be employed for life, is of such an unusual and extraordinary nature as to require proof of Dr. Allen's actual authority to make such an agreement. Reliance is placed upon Heaman v. E. N. Rowell Co., 261 N.Y. 229, 185 N.E. 83; Carney v. New York Life Ins. Co., 162 N.Y. 453, 57 N.E. 78, 49 L.R.A. 471; Davidson v. Library Bureau, 234 App.Div. 47, 254 N.Y.S. 95, modified 259 N.Y. 654, 182 N.E. 221; Gamacho v. Hamilton Bank-Note & Engraving Co., 2 App.Div. 369, 37 N.Y.S. 725, appeal dismissed 158 N.Y. 663, 52 N.E. 1123. See also Clifford v. Firemen's Mut. Benev. Ass'n of City of New York, 232 App.Div. 260, 249 N.Y.S. 713, affirmed without opinion 259 N.Y. 547, 182 N.E. 175; Beers v. New York Life Ins. Co., 66 Hun 75, 20 N.Y.S. 788. It is also urged that there is no evidence of such actual authority, but that the contrary is established. We shall assume, *arguendo*, that neither express nor implied actual authority has been shown, and pass to the question of apparent authority.

The question of an agent's apparent authority to bind his principal to a contract of lifetime employment has recently been extensively discussed by this court in Lee v. Jenkins Bros., 2 Cir., 268 F.2d 357, 363–371, certiorari denied 361 U.S. 913, 80 S.Ct. 257, 4 L.Ed.2d 183. It was there noted that the law in this area is in a state of evolution, thus accounting for the failure of the courts to evolve any guiding principles. 2 Cir., 268 F.2d 357, 368–369. Such development also renders earlier precedents doubtful authority. Thus it would be a

years cannot. See 2 Corbin on Contracts §§ 445, 446 (1959 Supp.).

mistake to consider Gamacho v. Hamilton Bank-Note & Engraving Co., supra, 2 App.Div. 369, 37 N.Y.S. 725, appeal dismissed 158 N.Y. 663, 52 N.E. 1123, as reflecting the current status of New York law. There the court in 1896 held that a general manager had no apparent authority to hire an employee for a three-year term at a sliding scale of $2,000 to $4,840 a year. True, the New York courts in recent years have rarely had occasion to consider the question herein presented. The most recent opinion cited by the defendant was written in 1933. Heaman v. E. N. Rowell Co., supra, 261 N.Y. 229, 185 N.E. 83. Compare the 1956 decision in Grossman v. Redi-Food Co., 2 A.D.2d 670, 152 N.Y.S.2d 624.

■ As Judge Medina concluded in Lee v. Jenkins Bros., supra, 2 Cir., 268 F.2d 357, 370, apparent authority is essentially a question of fact. The New York courts have always recognized that in special circumstances an agent may have apparent authority to execute a lifetime employment contract. See Usher v. New York Cent. & H. R. R. Co., 76 App.Div. 422, 78 N.Y.S. 508, affirmed 179 N.Y. 544, 71 N.E. 1141; cf. Rague v. New York Evening Journal Pub. Co., 164 App.Div. 126, 149 N.Y.S. 668. Thus we must examine the circumstances attending plaintiff's employment.

■ There can be little doubt that Dr. Allen had apparent, if not actual, authority to offer employment to the plaintiff. Defendant's recruiting representative invited plaintiff to travel to New York from Austin, Texas, at the company's expense for the sole purpose of interviewing Dr. Allen, whom the representative described as "in charge of hiring." At the trial Dr. Allen testified that his duties included "recruiting and developing candidates for positions on the medical staff in Saudi Arabia for the hospital." So after receiving a formal offer from Dr. Allen, plaintiff received the letter from the defendant's Personnel Department quoted in note 1 supra which recited that it confirmed the offer of employment. We have therefore only to consider the extent of the commitment which Dr. Allen might make.

As bearing on the term of employment which Dr. Allen might make, the foreign location, the type of position, and plaintiff's age and occupation are among the relevant circumstances. In view of the difficulty of recruiting employees, especially qualified medical personnel, and of the expenses incurred by defendant in transporting its employees from the United States, it would seem as likely that employment in Saudi Arabia would be for a minimum term as it would be at will.[7] Although defendant might be reluctant to offer long-term employment in positions requiring the exercise of executive discretion, this factor would seem less applicable in the case of experienced medical personnel. Plaintiff was no longer a young man, being 47 years of age at the time of employment. In addition, he was reluctant to abandon his established practice in Austin unless assured of long-term employment. In view of these circumstances we conclude that there was sufficient evidence of Dr. Allen's apparent authority to justify submission of the issue to the jury.

### Justifiable Discharge

Defendant asks finally that the judgment be affirmed because the evidence conclusively established plaintiff's discharge for cause. While defendant presented evidence on this issue, we agree with the conclusion reached by the court below: "It was a vigorously contested

---

7. In a letter dated January 12, 1956, to the United States Department of State, relating to plaintiff's status, defendant stated, *inter alia:* Dr. Farmer "is a regular employee in the foreign service of this Company. * * * The Company * * * regards regular employment as career and permanent, subject to the usual conditions of lay-off, resignation and termination common to industry. Our personnel policies reflect this understanding and seek to foster longevity of service."

factual issue, appropriately within the province of the jury to decide." D.C.S.D. N.Y., 176 F.Supp. 45, 47. Indeed, it was on this issue that the jury was unable to reach agreement.

Thus the judgment is reversed and the action is remanded for trial.