■ ELMA PENATO, Appellant, v STEPHEN GEORGE et al., Respondents.— In an action for an accounting, plaintiff appeals from an order of the Supreme Court, Queens County, dated August 4, 1975, which, *inter alia,* (1) granted summary judgment in favor of defendant Eastchester Associates, Inc., and (2) dismissed the complaint as against the other defendants. Order modified by deleting therefrom the fourth, fifth and sixth decretal paragraphs (which dismissed the complaint as against all defendants, except Eastchester Associates, Inc., with leave to replead an action at law against those defendants) and by adding thereto provisions (1) denying the motions to dismiss the complaint as to all defendants except Eastchester Associates, Inc., and (2) granting plaintiff leave to amend her complaint by adding thereto a cause of action for damages for breach of contract. As so modified, order affirmed, without costs or disbursements. Plaintiff's time to serve an amended complaint is extended until 20 days after entry of the order to be made hereon. The plaintiff, Elma Penato, alleges that in January, 1963 she withdrew $5,000 from her savings account and transferred that money to defendant Stephen George. Robert Penato, the plaintiff's son, had been acquainted with Stephen George and his brother Thomas George for a number of years, and had even worked for their real estate business, defendant Eastchester Associates, Inc., as a salesman. Plaintiff alleges that the $5,000 was needed by the Georges to help them get certain patent applications filed and underway. She asserts that a pooling of resources was contemplated; the Georges had the patent applications, she had the money and her son would give his time, energy and labors toward the project. After transferring the money, plaintiff received a letter, dated January 24, 1963, from Stephen George and addressed to her son, who lived at home with his parents. The letter recited that in consideration of $5,000, Robert Penato was to receive 2% of the *net* income earned by five specified patent applications and one trademark. Mrs. Penato asserts that she called Stephen George and requested that the "agreement" be changed to show that she was the true party in interest, and that George said he would comply with her request. However, he did not comply and the next correspondence from George was a letter, dated July 3, 1963, addressed to Robert Penato. That letter referred to substantially the same five patent applications and to the trademark listed in the January 24 letter, but provided that in consideration of $10, Robert Penato was to receive 1% of *all* income derived from the sale or development of the specified applications, after the cost of development. The only other provision was to the effect that the cost of development would in no event exceed $100,000. Two subsequent letters, both dated November 14, 1963, from Stephen George to Robert Penato, provided that the latter would receive 3% of all income earned by two additional patent applications, after the cost of development. Consideration of $10 was recited in each of the two letters, and each provided, further,

that the cost of development should not exceed $50,000. One of those two letters listed a patent application for the "Shedless & Mar Resistant Flock & Manufacturing Process". Thereafter, in 1965, the defendant Textured Products, Inc., was formed by the Georges, with Thomas George as president and Stephen George as vice-president. By letter dated September 7, 1965 Stephen George informed Robert Penato that negotiations had been completed for the sale of certain patent applications including the "Shedless & Mar-Resistant Flock". The letter summarized the terms of the sale, which included a minimum annual guarantee of $15,000 to become effective upon completion of a pilot machine. It was estimated that the machine would be completed on or about January 1, 1966. The letter also noted that "if for any reason the patents should not issue, the [purchaser of the patent applications] agrees to continue to pay us for a period of 20 years in consideration of the 'know-how' that is to be transferred together with the patent applications." The purchaser was not identified in the letter, but it is undisputed that the purchaser was defendant Textured Products, Inc. Mrs. Penato asserts that in 1966 she asked Stephen George about the "deal" referred to in his letter of September 7, 1965; he replied that "the deal fell through." She further asserts that in January, 1968 she received a letter from Stephen George advising that a patent on "the phonograph record" had been issued and that "we" are looking forward to profitable licensing arrangements. In March, 1968 Stephen George advised "that the machines would be ready in a few weeks" and, in November, 1968, he made an advance of $500 "against monies on the patent series." In May, 1969 Mrs. Penato and her husband went to see defendants' plant in Mt. Vernon at the invitation of the Georges. During a toast at the plant, Thomas George, president of all the corporate defendants, allegedly stated, "we are all going to be millionaires." In 1970 Mrs. Penato was in need of funds and she approached Stephen George about getting some money pursuant to their agreement. George allegedly told her he had not earned any money but would try to locate someone to take over her interests. No further communications were received along those lines. In 1971 Thomas George allegedly forwarded copies of a *Business Week* article which told of how the Georges switched production with their flock material from records to textiles. In April, 1971 Mrs. Penato claims she received from defendant Textured Products, Inc., sample materials which were to be used in the production of "Fibercoat", a fire retardant fabric. Further samples were allegedly mailed in January, 1972. Mrs. Penato contends that she was led to believe by Stephen George that the "Flock" he developed in 1963 was the same item which Textured Products, Inc., is using in its "Fibercoat" product. She asserts the Georges always told her that she had an interest in "Fibercoat". During the middle of 1972, Mrs. Penato allegedly spoke to Thomas George about selling her interest. She claims Thomas advised her not to sell because "things were about to break open" and he said: "If I let you sell now, you'll never forgive me." Mrs. Penato said she would wait. Robert Penato died in April, 1973. It is alleged that in June, 1973, Mrs. Penato and her husband again went to defendants' plant in Mt. Vernon, with the intent of getting the January, 1963 agreement corrected. It is claimed that they made an appointment for Stephen and Thomas George to come to their home the next day for that purpose. The Georges appeared the next day but offered to return the $5,000 instead. Stephen George allegedly told her that the factory was "going down" and that there was no future in the company. Mrs. Penato states she indicated she would be willing to accept her money back with interest. Thomas George allegedly figured that amount to be

$10,000 and stated that he would come up with that sum and pay her back. Mrs. Penato asserts that was the last time she saw or heard from the Georges. In its decision Special Term observed that plaintiff's pleadings and affidavit failed to make out any fiduciary, or even contractual, relationship between plaintiff, or her son, and Eastchester Associates, Inc. That corporation's motion to dismiss the complaint was deemed to be one for summary judgment, and the motion was granted. With respect to the other defendants, Special Term noted that since the parties had proceeded by offering matter extrinsic to the bare pleadings, it "need not assume the truthfulness of the pleaded allegations, but has the right to apply the criteria of whether an actual cause of action exists, not whether one is properly stated." Special Term stated the preliminary issue to be "the relationship primarily created by the plaintiff and defendant [Stephen] George" and that "the parties all claim" that this relationship "arises from the written letter-agreements." Special Term went on to hold that the "letter-agreements" were not subject to explanation by parol evidence and that they created a mere debtor-creditor relationship, insufficient to sustain an action for an accounting. Therefore the complaint was dismissed, but with leave to replead an action at law against the defendants other than Eastchester Associates, Inc. The resulting order, dated August 4, 1975, is appealed from. We note at the outset that in considering a motion to dismiss a complaint on the ground that it fails to state a cause of action, the pleadings should be construed in a light most favorable to the plaintiff *(Cohn v Lionel Corp.,* 21 NY2d 559). A pleading, the sufficiency of which is being tested, "is deemed to allege whatever can be implied from its statements by fair intendment and the whole of it must be considered" *(Howard Stores Corp. v Pope,* 1 NY2d 110, 114). All of the allegations must be assumed to be true and the cause of action must stand if, in any aspect upon the facts stated, the plaintiff is entitled to a recovery *(Kober v Kober,* 16 NY2d 191). It is true that when a moving party offers matter extrinsic to the pleading, the court need not assume the truthfulness of the pleaded allegations *(Rappaport v International Playtex Corp.,* 43 AD2d 393). However, when a court elects to proceed in such a manner, it must inquire whether any factual issues are presented by the affidavits and other evidence submitted by the parties; its inquiry is not unlike that made by a court when considering a motion for summary judgment (see *Kelly v Bank of Buffalo,* 32 AD2d 875). In considering a motion for summary judgment, the credibility of the affiants should not be weighed unless the facts sworn to are patently untrue *(Glick & Dolleck v Tri-Pac Export Corp.,* 22 NY2d 439). Accordingly, the facts alleged in plaintiff's affidavit should be presumed to be true. A complete and liberal reading of the complaint and plaintiff's affidavit in opposition to the motions to dismiss discloses reliance by plaintiff on something more than the so-called "letter-agreements" between Robert Penato and Stephen George. Those letters were simply memoranda which, when read as a whole, are ambiguous and incomplete. They were therefore subject to explanation by parol evidence and Special Term's inquiry into the relationship between the parties need not have been limited by their literal language (see *Mesibov, Glinert & Levy v Cohen Bros. Mfg. Co.,* 245 NY 305, 313; *Beattie v New York & Long Is. Constr. Co.,* 196 NY 346; *J. J. Newberry Co. v Kingston Plaza,* 31 AD2d 862; *Ciunci v Wella Corp.,* 26 AD2d 109; *Dubin v Fashion Knitting Mills,* 19 Misc 2d 95). At the least, the letters and the totality of conduct ascribed to the Georges by the plaintiff suggest the existence of an understanding far broader than one to share in the profits derived from *specific* patent applications. A plaintiff may properly be limited to a recov-

ery based upon the transactions, occurrences, or series of transactions or occurrences set out in his complaint, but, if he establishes a right to money damages on the basis thereof, his complaint should not be dismissed merely because it was framed to support a cause of action for equitable relief (*Kaminsky v Kahn,* 23 AD2d 231, 235; 20 NY2d 573). While we are mindful of the fact that plaintiff was given leave to replead an action at law, such a resolution was unnecessary (see *Lane v Mercury Record Corp.,* 21 AD2d 602) and has been termed "a reproach to the efficiency of our courts" (see *Kaminsky v Kahn, supra,* p 236). But even as to the elements of a cause of action for an accounting, the pleading and affidavits meet the minimum requirements necessary to avoid dismissal at this stage. The facts alleged suggest something more than a debtor-creditor relationship (see *Rubenstein v Small,* 273 App Div 102). Although plaintiff has failed to allege any agreement to share losses, no such allegation is necessary at the pleading stage if other elements of a joint venture are present (see *P.F.G. Ind. v Tel-Glass, Inc.,* 49 AD2d 112). The law will imply an agreement to share losses (see *Forman v Lumm,* 214 App Div 579; *Mariani v Summers,* 3 Misc 2d 534). In the case at bar, a question of fact appears as to just what the parties intended when the plaintiff transferred money to Stephen George in 1963. Absent further inquiry into the full agreement and dealings between the parties, it is impossible to ascertain whether there was merely a loan, or whether a joint venture existed. A liberal reading of the complaint and affidavits implies a situation wherein friends were persuaded to help get some inventions "off the ground" and were led to believe that they were principals in the newly-begun business activity. But even if the facts alleged are insufficient to give rise to a joint venture, plaintiff has certainly set forth sufficient factual allegations to suggest the existence of a fiduciary relationship. The exact limits of such a relationship are impossible of statement (see Bogert, Trusts & Trustees [2d ed], § 481). Broadly stated, a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another (see *Mobil Oil Corp. v Rubenfeld,* 72 Misc 2d 392, 399–400, affd 77 Misc 2d 962, revd on other grounds 48 AD2d 428). Such a relationship might be found to exist, in appropriate circumstances, between close friends (see *Cody v Gallow,* 28 Misc 2d 373) or even where confidence is based upon prior business dealings (see *Levine v Chussid,* 31 Misc 2d 412). Under the facts alleged herein it is impossible to say that plaintiff will be unable to prove the existence of a fiduciary relationship. There is no merit to defendants' contention that the complaint must be dismissed for failure to set forth sufficient allegations of wrongdoing. Under the circumstances defendants are in control and possession of the facts which are decisive of this question and discovery should be permitted (see CPLR 3211, subd [d]; *Charles Abel, Ltd. v School Pictures,* 40 AD2d 944). Likewise, defendants are in control of the facts relating to the relationship between Stephen George and defendant Textured Products, Inc., and its wholly owned subsidiaries. The complaint should not have been dismissed as to Textured Products, Inc., and its subsidiaries absent fuller inquiry into that question, and particularly with respect to their relationship with Stephen George in 1965 when the patent application rights were sold. Finally, summary judgment was properly granted in favor of defendant Eastchester Associates, Inc. There was no showing that Eastchester Associ-

ates, Inc., had anything whatsoever to do with the subject patent applications, or that it had any fiduciary or contractual relationship with plaintiff and her son. Damiani, Titone and Hawkins, JJ., concur; Cohalan, Acting P. J., and Rabin, J., dissent and vote to affirm the order, with the following memorandum: The letters from defendant Stephen George to plaintiff's intestate were simply memoranda which, when read as a whole, were ambiguous and incomplete. They were therefore subject to explanation by parol evidence and Special Term's inquiry into the relationship between the parties need not have been limited by their literal language (see 22 NY Jur, Evidence, §§ 601, 616, 627 and cases cited therein). Nevertheless, a fair reading of the complaint and plaintiff's affidavit in opposition to the motions to dismiss, fails to disclose *facts* which are sufficient to support a cause of action for an accounting. The facts alleged show merely a debtor-creditor relationship, albeit a relationship wherein one friend has helped another start out in business. Such a relationship is insufficient to sustain an action for an accounting (see *Sugarman v Weisz,* 34 AD2d 763).