OPINION OF THE COURT
Bernard J. Fried, J.
Defendants move, pursuant to CPLR 3211 (a) (7), to dismiss the complaint on the grounds that it fails to state a cause of action based upon a joint venture against any of the defendants *883 and, alternatively, that no claim is stated against the two individual defendants, Lawrence Fuersich and Henry Burr.
The complaint alleges that plaintiff, Seena Dundes, is the legal representative of the estate of Lester Dundes. Lester Dundes was a renowned and highly respected figure in the interior design industry, having been the publisher for many years of Interior Design, the most important magazine in the field. (Complaint ¶ 8.) After Dundes retired as publisher of Interior Design, he developed the idea for a new book, to be called Corporate Interiors, which would contain photographs of current corporate and commercial interior design layouts by leading United States design firms, and was to be financed by fees paid by such firms and advertisements from furniture manufacturers and other vendors in the field. (II 9.) Dundes presented his idea to defendants Fuersich and Burr, and the three men thereafter agreed to establish and carry out a joint venture to publish Corporate Interiors. (If 10.)
Dundes, based on his reputation and contacts in the industry, would be responsible for contacting interior designers and architects to solicit their participation and obtain photographs of their work; hire the persons required to produce the editorial content and layout design; plan for potential advertisers; and perform other services required to get the book ready for printing. (IT 10 [a].) It was the responsibility of Fuersich and Burr, through either or both of their corporations, defendants Visual Reference Publications, Inc. and Retail Reporting Corp., to arrange for and supervise the physical production and printing of the book; to arrange for and supervise the sale and distribution of printing of the book; and to keep accurate records and accounts of all revenues, sales, costs and expenses. (¶ 10 [b].)
Neither Dundes nor Fuersich/Burr or their corporations would receive any salary or compensation for performing these services, although they would each be entitled to reimbursement from revenues, if any, for all costs incurred by each of them. After reimbursement of such costs, Dundes, on the one hand, and Fuersich/Burr or their corporations, on the other hand, would share equally in the net profits realized from the book. (¶ 10 [f].) With respect to losses, the complaint alleges that the parties’ arrangement contemplated that Dundes and Fuersich/Burr would take the risk that they would receive nothing for services performed by each of them, and the expenses both would incur, if sufficient revenues did not materialize. (¶ 11)
*884 The first edition of Corporate Interiors was completed, printed and distributed in 1996. (¶ 14.) Based on a calculation of revenues and costs, which was prepared by Fuersich and Burr, the net profits derived from the first edition were substantial, and, in accordance with the parties’ understanding, were split equally between Dundes and defendant Retail Reporting Corp., a corporation owned and controlled by Fuersich and Burr. (¶¶ 6, 15.) As a result of the success of the first edition, Dundes, Fuersich and Burr caused four more editions of the book to be published between 1998 and 2001 in the same manner and subject to the same terms and conditions as the first edition. (1i1i 17-19.)
Dundes was working on Corporate Interiors No. 6 at the time of his death on March 13, 2004. Shortly after his death, defendant Visual Reference Publications, Inc. issued a press release, in which the company mourned the death of Lester Dundes, described as the “driving force of Corporate Interiors, and our admired colleague.” (Complaint ¶ 26.) This press release stated that the company planned to continue publishing Corporate Interiors (although Dundes was listed as the publisher on each of the first five editions) and that Corporate Interiors No. 6 would be released in January 2005. (Id.) After defendants took the position that Dundes, at the time of his death, had no continuing interest in a sixth edition of the book or in the title “Corporate Interiors,” this lawsuit ensued. (¶¶ 27-36.)
It bears repeating that, when presented with a motion to dismiss pursuant to CPLR 3211 (a) (7), it must be determined whether the complaint states a cause of action. “The motion must be denied if from the pleadings’ four corners ‘factual allegations are discerned which taken together manifest any cause of action cognizable at law.’ ” (Richbell Info. Servs. v Jupiter Partners, 309 AD2d 288, 289 [1st Dept 2003], quoting 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 151-152 [2002].) The complaint must be construed liberally, the facts alleged therein accepted as true, and plaintiff accorded the benefit of every possible favorable inference. (E.g., 511 W. 232nd Owners Corp., 98 NY2d, supra at 152; Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001].)
“A joint venture is a ‘special combination of two or more persons where in some specific venture a profit is jointly sought.’ ” (Gramercy Equities Corp. v Dumont, 72 NY2d 560, 565 [1988], quoting Forman v Lumm, 214 App Div 579, 583 [1st Dept 1925].) The indicia of the existence of a joint venture are: *885 (i) acts manifesting the intent of the parties to be associated as joint venturers; (ii) mutual contribution to the joint undertaking through a combination of property, financial resources, effort, skill or knowledge; (iii) a measure of joint proprietorship and control over the enterprise; and (iv) a provision for the sharing of profits and losses. (Richbell, 309 AD2d, supra at 298, citing Tilden of N.J. v Regency Leasing Sys., 230 AD2d 784, 785-786 [2d Dept 1996].) A joint venture does not require an equal sharing of profits or losses. (Richbell, supra at 298.)
Read in the light most favorable to the plaintiff, the complaint adequately alleges the elements of a joint venture, including an agreement as to the sharing of losses. Paragraph 11 alleges that Dundes and Fuersich/Burr would take the risk that they would receive nothing for services performed by each of them, and the expenses both would incur, if sufficient revenues did not materialize. The complaint further alleges that the parties successfully produced and distributed five editions of Corporate Interiors, and that in each instance, Fuersich/Burr caused 50% of the net profits to be paid over to Dundes. The venture did not, in fact, incur any losses. Defendants argue these allegations are insufficient, because in order to adequately allege loss sharing for a joint venture, the complaint must allege that the parties expressly agreed that Dundes would be personally liable for the venture’s debts and liabilities.
In Cobblah v Katende (275 AD2d 637 [2000]), the First Department recognized that a joint venture may exist even where there is no explicit agreement to share losses if “there was no reasonable expectation that there would be any losses.” (Id. at 639; cf. P.F.G. Indus, v Tel-Glass, Inc., 49 AD2d 112, 114 [1st Dept 1975] [failure to allege agreement to share losses was not fatal to joint venture that involved a single transaction that was concluded profitably].) Here, the complaint alleges a successful venture that netted profits for each of the five editions of the book they published. The only losses the parties allegedly contemplated and discussed were the losses each would incur in producing and publishing books that did not sell. The fact that the parties did not contemplate, nor discuss, tort liability or other type's of liability is not fatal to the claim if there was no reasonable expectation by the parties that the venture would render them subject to such liability.
Indeed, even if the plaintiff has failed to allege any explicit agreement regarding the sharing of liabilities other than production costs, no such allegation is needed at the pleading stage *886 if all of the other elements of a joint venture are present. (Penato v George, 52 AD2d 939, 942 [2d Dept 1976], appeal dismissed 42 NY2d 908 [1977], citing P.F.G. Indus, v Tel-Glass, Inc., 49 AD2d 112, supra.) “The law will imply an agreement to share losses.” (Penato, 52 AD2d at 942, citing Forman v Lumm, 214 App Div 579 [1925], supra, and Mariani v Summers, 3 Misc 2d 534 [Sup Ct, NY County 1944], affd 269 App Div 840 [1st Dept 1945].)
In Matter of Steinbeck v Gerosa (4 NY2d 302 [1958], appeal dismissed 358 US 39 [1958]), upon which defendants rely heavily, the Court of Appeals merely recognized that a royalty agreement entitling an author to a percentage of the gross receipts from the sale of books and derivative works did not constitute a joint venture with the publisher, because, “there was to be no sharing of losses.” (Id. at 317.) Likewise, in Weinreich v Sandhaus (1989 WL 130641, 1989 US Dist LEXIS 8424 [SD NY, July 24, 1989]), the complaint was dismissed on summary judgment because the plaintiff expressly stated at his deposition that, in the event there were any losses from a joint venture to design, develop and market laser light shows, he had no obligation, liability or responsibility for such losses. He further testified that he was not obligated to return any of the money advanced to him in the event that there were no profits.
In another Federal District Court case relied on by defendants, the complaint was sustained on a motion to dismiss where it was alleged that the plaintiffs stood to lose all of the marketing costs if the venture was not successful. (Kidz Cloz, Inc. v Officially For Kids, Inc., 2002 WL 392291, 2001 US Dist LEXIS 1135 [SD NY, Mar. 13, 2002].) While the complaint was later dismissed on summary judgment, in that case, the undisputed evidence indicated that the defendant had no intent to form a partnership or joint venture with the plaintiff, and that the parties never discussed losses. (Kidz Cloz, Inc. v Officially For Kids, Inc., 320 F Supp 2d 164, 172-175 [SD NY 2004].) However, in Laurelle Mfg. Corp. v Truly Yours, Inc. (1991 WL 18144, *2, 1991 US Dist LEXIS 1414, *4 [SD NY, Feb. 5, 1991]), Judge Haight recognized as a “common sense proposition” the rule stated in Penato (supra). This, to me, is the correct view of New York law.
Defendants’ alternative ground for dismissal of the complaint as against the individual defendants is rejected. The complaint alleges that Dundes’ agreement was with Fuersich and Burr individually, and not with either or both of the corporations *887 through which they chose to perform their obligations. Paragraph 10 (c) alleges further that Dundes, Fuersich and Burr would confer, and be required to agree upon, all material matters relating to the conduct of the venture.
Conclusion and Order
For the foregoing reasons, it is hereby ordered that defendant’s motion to dismiss the complaint is denied.