[841 NYS2d 493]

Adina Marmelstein, Respondent, v Kehillat New Hempstead: The Rav Aron Jofen Community Synagogue, Defendant, and Mordecai Tendler, Appellant.

First Department, August 23, 2007

APPEARANCES OF COUNSEL

*Wilson, Elser, Moskowitz, Edelman & Dicker LLP*, White Plains (*Glen S. Feinberg* and *Katherine Hammond Gallè* of counsel), for appellant.

*Kramer & Dunleavy, L.L.P.*, New York City (*Lenore Kramer* and *Jonathan R. Ratchik* of counsel), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

At issue on this appeal is the viability of plaintiff's causes of action for breach of fiduciary duty and intentional infliction of emotional distress. Since the complaint alleges nothing more than thinly veiled claims of seduction, prohibited by Civil Rights Law § 80-a and couched otherwise to avoid that statutory bar, we reverse and dismiss these causes of action.

The allegations of the complaint, which must be taken as true on a motion to dismiss for failure to state a cause of action (*Cron v Hargro Fabrics*, 91 NY2d 362, 366 [1998]), are as follows. In 1994, plaintiff became acquainted with defendant Mordecai Tendler, the founder and spiritual leader of defendant synagogue. Known within the Orthodox Jewish community as a scholar, educator and community leader, defendant held himself out as a counselor and advisor with an expertise in women's issues. In 1996, plaintiff began attending services at the synagogue. Defendant advised plaintiff with respect to her personal, legal and financial problems, and represented that he would assist her in finding a prospective husband so she would be able to marry and have children as she wished. Beginning in November 2001, the two began a sexual relationship that lasted through May 2005.

Plaintiff alleges that she was induced by defendant to engage in this physical relationship "as part of a course of sexual therapy which he represented would lead to her achieving her goals of marriage and children." He told her she was "closed to the possibility of finding a husband" and "would never find a husband in her current state." He advised her "to permit him to have sexual intercourse with her so that her 'life will open up and men will come' to her." He told her

he "was as close to God as anyone could get," and engaging in sexual relations with him would be her "only hope." The relationship did not lead to the outcome plaintiff desired. Rather, she alleges, defendant "physically and emotionally abused [her] for his own sexual pleasure and gratification," and warned that if she told anyone about their sexual relationship he "would have her placed in a straight jacket," "have her put in the penitentiary," and "would turn the community against her."

The action was commenced in December 2005, asserting four causes of action against defendant and one against the synagogue for negligent retention. On defendant's motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) as against him, the court granted the motion as to the causes of action for fraud and negligent infliction of emotional distress, and denied the motion as to the claims for breach of fiduciary duty and intentional infliction of emotional distress. Since plaintiff did not appeal from the partial grant of the motion, only the two latter causes of action are at issue here.

As to the claim for breach of fiduciary duty, the complaint alleges that defendant "occupied a position as fiduciary to the plaintiff . . . as her counselor, advisor and therapist and owed her a relationship of trust and confidence," which he breached. Plaintiff asserts that she was physically violated, her reputation impugned, and that she was ostracized from her synagogue and lost her standing in the community. The claim for intentional infliction of emotional distress alleges that defendant engaged in conduct—including falsely inducing plaintiff into a sexual relationship, physically violating and abusing her, and causing her to be harassed, threatened, intimidated and ostracized by the community—which would and did result in severe emotional distress.

Pursuant to section 80-a of the Civil Rights Law, originally enacted as section 61-b of the Civil Practice Act (L 1935, ch 263), "[t]he rights of action to recover sums of money as damages for alienation of affections, criminal conversation, seduction, or breach of contract to marry are abolished. No act done within this state shall operate to give rise . . . to any such right of action." A cause of action for seduction is broadly defined to cover "any conduct on the part of a man, without the use of force, in wrongfully inducing a woman to surrender to his sexual desires" (*Coopersmith v Gold,* 172 AD2d 982, 984 [1991]).

Distilled to its essence, the complaint alleges that plaintiff was induced by defendant, who "represented himself as an advisor, a father figure and a god," to engage in a sexual relationship "as part of a course of sexual therapy which he represented would lead to her achieving her goals of marriage and children." Since the conduct alleged here falls squarely within the embrace of Civil Rights Law § 80-a, whether couched as a claim for breach of fiduciary duty or intentional infliction of emotional distress, it is not actionable.

In any event, the complaint fails to state a cause of action for breach of fiduciary duty. "One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation" (Restatement [Second] of Torts § 874). "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation" (id., Comment a). It is thus clear that to maintain a cause of action for breach of fiduciary duty, the existence of a duty is essential. Plaintiff argues that since defendant held himself out as a counselor and advisor with an expertise in women's issues, he "owed a fiduciary duty to [plaintiff] and a duty not to abuse their relationship of trust and confidence."

"Fiduciary is a vague term, and it has been pressed into service for a number of ends" (Doyle v Turner, 90 F Supp 2d 311, 333 [2000], affd sub nom. Hughley v Local 1199, Drug, Hosp. & Health Care Empls. Union, RWDSU, 231 F3d 889 [2000] [internal quotation marks omitted], quoting Black's Law Dictionary 640 [7th ed], quoting D.W.M. Waters, The Constructive Trust, at 4 [1964]). The allegations that defendant held himself out as a counselor and advisor with an expertise in women's issues are merely general allegations; the mere giving of advice that is in turn accepted is not sufficient to create a fiduciary relationship.

Significantly, it should be noted that the complaint conspicuously avoids any reference to defendant as a rabbi or even an allegation that plaintiff was a member of his congregation. While he is alleged to have advised plaintiff "with respect to her personal, legal and financial problems," there is no allegation that he counseled her with respect to religious matters. No doubt, these omissions are intended to avoid entanglement with First Amendment concerns (see Langford v Roman Catholic Diocese of Brooklyn, 271 AD2d 494, 495

[2000] [cause of action to recover damages for breach of fiduciary duty arising out of sexual relationship between a parishioner and a member of the clergy properly dismissed as it would require courts to "venture into forbidden ecclesiastical terrain"]).

We cite *Langford* merely to note the complaint's studied avoidance of any reference to religious counseling—a curious omission in light of defendant's position as spiritual leader of the synagogue plaintiff attended. This, as we noted, is an obvious ploy to stay clear of the First Amendment (*see Wende C. v United Methodist Church, N.Y. W. Area,* 4 NY3d 293 [2005], *cert denied* 546 US 818 [2005]). That *Wende C.* left open the question of whether a fiduciary relationship may arise "between a cleric and a parishioner under very different circumstances, not present here" (at 299) does nothing to advance the dissent's position, especially since that case did not involve veiled allegations of seduction.

While plaintiff asserts that defendant "occupied a position as fiduciary . . . as [plaintiff's] counselor, advisor and therapist," there is no claim that he held himself out to be a professional counselor, that the parties had a professional relationship, that he was trained to be a therapist* in any particular specialty or even that he was counseling her in a specific area. On the contrary, as noted, she claims that he counseled her "with respect to her personal, legal and financial problems." That plaintiff may have succumbed to defendant's persuasive power and may have been exploited by him for his own sexual gratification is insufficient to impose a legal duty on him, entitling plaintiff to the recovery of damages. She must allege more than her subjective belief in defendant's rectitude and honesty. "[A] fiduciary duty cannot be imposed unilaterally" (*United States v Chestman,* 947 F2d 551, 567 [2d Cir 1991], *cert denied* 503 US 1004 [1992]). The dissent offers no authority to support its conclusion that defendant's alleged claim of expertise in a particular area coupled with advice to plaintiff, on which she allegedly relied, is sufficient for the imposition of a fiduciary duty.

While informal fiduciary relationships may be found to exist between friends or family members (*see e.g. Penato v George,* 52

---

* A therapist is defined as a person "trained in applying occupational or physical measures in the treatment or rehabilitation of patients" (Webster's Third New International Dictionary [1993]).

AD2d 939, 942 [1976], *appeal dismissed* 42 NY2d 908 [1977]; *Cody v Gallow,* 28 Misc 2d 373 [1961]), in those cases the plaintiff suffered a pecuniary injury. Here the alleged harm is that plaintiff was sexually exploited, and as noted, actions based on such a claim are prohibited by statute.

Since the cause of action for intentional infliction of emotional distress is founded on the sexual relationship, it is also barred by section 80-a and should be dismissed as well.

Accordingly, the order of the Supreme Court, New York County (Jane S. Solomon, J.), entered June 20, 2006, which denied defendant Tendler's motion to dismiss the causes of action for breach of fiduciary duty and intentional infliction of emotional distress, should be reversed, on the law, without costs or disbursements, and the motion granted. The Clerk is directed to enter judgment dismissing the complaint against said defendant.

Sweeny, J. (dissenting). The IAS court denied defendant Tendler's motion to dismiss the breach of fiduciary duty claim, holding that the issue involved a question as to whether his actions "betrayed a trust that plaintiff had reasonably placed in him, commencing well before she joined his congregation", not whether those acts were in conformance with religious practices (2006 NY Slip Op 30204[U], *6-7).

Fiduciary relationships have been broadly defined and have been held to exist

> "in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies upon, another. Such a relationship might be found to exist, in appropriate circumstances, between close friends or even where confidence is based upon prior business dealings" (*Penato v George,* 52 AD2d 939, 942 [1976], *appeal dismissed* 42 NY2d 908 [1977] [citations omitted]).

Plaintiff's allegations on this cause of action, taken as true, describe such a fiduciary relationship. Tendler held himself out as a counselor and advisor with expertise in women's issues, and was consulted by plaintiff because of his reputation. She initially consulted him regarding a number of personal issues and he encouraged the development of a relationship of trust

and confidence. Once this relationship was established, he betrayed this confidence and abused his influence by inducing plaintiff to enter into a sexual relationship to satisfy his own desires.

The fact that the complaint makes no mention of Tendler as a rabbi or that plaintiff was a member of his congregation is not, as the majority argues, of significance. Plaintiff did not become a member of Tendler's synagogue until well after she had established a relationship with him while he was acting as her advisor on a number of issues unrelated to her search for a husband. Indeed, even when she sought his counsel and advice on that issue, she did not do so in the context of her religious practices, nor did she seek spiritual guidance or counseling. The majority's reference to *Langford v Roman Catholic Diocese of Brooklyn* (271 AD2d 494, 495 [2000]) is misplaced. The plaintiff in *Langford* "sought religious and spiritual counseling" from the defendant clergyman, which ultimately led to a sexual relationship between them (*id.*). In dismissing the cause of action for breach of fiduciary duty, the Court there found the basis of that cause of action was clergy malpractice, which "would require the courts to 'venture into forbidden ecclesiastical terrain' " (*id.*). There is no claim here that plaintiff sought "religious and spiritual counseling" from Tendler, and since we must accept the allegations in the complaint as true for purposes of this motion, we cannot infer, as the majority does, that this is simply a pleading device* to circumvent the prohibitions regarding clergy malpractice and seduction. Indeed, a breach of fiduciary duty claim may be viable even in those situations where a plaintiff seeks spiritual counseling from a member of the clergy. In *Wende C. v United Methodist Church, N.Y. W. Area* (4 NY3d 293 [2005], *cert denied* 546 US 818 [2005]), the plaintiff sought ministerial counseling from defendant pastor who, like here, was not a licensed professional counselor. She initiated a sexual relationship with the pastor, and subsequently she and her husband sued the pastor and church for what amounted to clergy malpractice. The Court of Appeals found that with respect to the plaintiffs' claims that the pastor had breached his fiduciary duty to them, those claims were not specifically pleaded. The Court held that "Given that no fiduciary cause of action is properly before us, we leave open for another day the question whether such

---

* Or as the majority characterized it, a "ploy."

a claim may arise between a cleric and a parishioner under very different circumstances, not present here" (*id.* at 299). Those "very different circumstances" may well be present here, and the IAS court properly denied Tendler's motion to dismiss the cause of action for breach of fiduciary duty.

The court found the complaint regarding intentional infliction of emotional distress contained no factual allegations that Tendler encouraged his congregants to harass plaintiff. However, it found other allegations on this cause of action sufficient to withstand the motion to dismiss.

To prevail on a cause of action for intentional infliction of emotional distress, a plaintiff must prove four elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard the substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress (*Howell v New York Post Co.*, 81 NY2d 115, 121 [1993]). Liability will be found "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (*Murphy v American Home Prods. Corp.*, 58 NY2d 293, 303 [1983], quoting Restatement [Second] of Torts § 46, Comment *d*).

Plaintiff alleges that Tendler repeatedly advised that her "only hope" of achieving her goal of getting married and having children was to engage in a course of "sexual therapy" with him. We must respectfully disagree with the majority that this is merely a seduction case. Rather, Tendler clearly exploited the vulnerability of plaintiff to attain his own ends. Allegations of this type of conduct have been held to be sufficient to survive a CPLR 3211 motion to dismiss (*see Sanchez v Orozco*, 178 AD2d 391, 394 [1991] [where the Court reinstated the cause of action seeking damages for emotional distress, based upon the allegation that the defendant psychiatrist had persuaded the plaintiff to have sexual relations with him for her to obtain a "therapeutic benefit"]; *see also Noto v St. Vincent's Hosp. & Med. Ctr. of N.Y.*, 160 AD2d 656 [1990], *lv denied* 76 NY2d 714 [1990]). The IAS court thus correctly denied defendant's motion to dismiss this cause of action, and I would vote to affirm.

ANDRIAS, J.P., and MALONE, J., concur with SULLIVAN, J.; WILLIAMS and SWEENY, JJ., dissent in a separate opinion by SWEENY, J.

Order, Supreme Court, New York County, entered June 20, 2006, reversed, on the law, without costs or disbursements, defendant Tendler's motion to dismiss the causes of action for breach of fiduciary duty and intentional infliction of emotional distress granted. The Clerk is directed to enter judgment dismissing the complaint against said defendant.