Galvstar Holdings, LLC, DSB Holdings, LLC, v. Harvard Steel Sales, LLC, Jeremy Jacobs

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of January, two thousand eighteen.

PRESENT: DENNIS JACOBS,
REENA RAGGI,
CHRISTOPHER F. DRONEY,
<u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - -X
GALVSTAR HOLDINGS, LLC, DSB
HOLDINGS, LLC,[1]
<u>Plaintiffs-Appellants</u>,

-v.- 17-1571

_____

[1] The Clerk of the Court is respectfully directed to amend the caption.

**HARVARD STEEL SALES, LLC, JEREMY JACOBS,**

        <u>Defendants-Appellees.</u>

- - - - - - - - - - - - - - - - -X

FOR APPELLANTS:                          Matthew H. Sheppe, Reiss Sheppe LLP, New York, NY.

FOR APPELLEES:                          Joseph A. Hess, Marshall Dennehey Warner Coleman & Goggin, P.C., New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Daniels, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the decision of the district court is **AFFIRMED IN PART AND VACATED AND REMANDED IN PART**.

Plaintiffs-appellants Galvstar Holdings, LLC ("Galvstar") and DSB Holdings, LLC appeal from an April 20, 2017 Order of the United States District Court for the Southern District of New York dismissing their suit against Defendants-appellees Harvard Steel Sales, LLC ("Harvard") and Jeremy Jacobs, pursuant to a motion under Fed. R. Civ. P. 12(b)(6).[2]  Appellants argue on appeal that the district court erred in dismissing their claims because: (1) the district court misapplied the legal standards applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for their breach of joint venture, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing claims; and (2) the district court abused its discretion in refusing to allow the appellants to amend

---

[2] Galvstar Holdings, LLC serves as the holding company for non-party Galvstar, LLC, which operates the steel plant at issue in this appeal.   DSB Holdings, LLC is the assignee of Galvstar, LLC's claims against Harvard.   In the interest of clarity, although some claims are DSB's, the court will refer to these entities collectively as "Galvstar" throughout this order unless otherwise specified.

their complaint.   We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

**1.**    "We review the grant of a motion to dismiss <u>de novo,</u> accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor."   <u>Fink v. Time Warner Cable</u>, 714 F.3d 739, 740–41 (2d Cir. 2013) (per curiam).    "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   <u>Id.</u>   "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."   <u>Id.</u> (internal citation and quotation marks omitted).

A joint venture is formed under New York law when:

> (a) two or more persons enter into an agreement to carry on a venture for profit; (b) the agreement evinces their intent to be joint venturers; (c) each contributes property, financing, skill, knowledge, or effort; (d) each has some degree of joint control over the venture; and (e) provision is made for the sharing of both profits and losses.

<u>SCS Commc'ns, Inc. v. Herrick Co.</u>, 360 F.3d 329, 341 (2d Cir. 2004).   "All of these elements must be present before joint venture liability may be imposed."   <u>Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.</u>, 909 F.2d 698, 701 (2d Cir. 1990).   As the district court concluded, Galvstar failed to adequately plead a breach of joint venture claim because: (1) it expressly disclaimed that it was forming a joint venture with Harvard in the February and May TPAs; and (2) no provision was made for the sharing of both profits and losses between Harvard and Galvstar.

The February and May TPAs between Galvstar and Harvard recite:

> The relationship of Galvstar and Harvard under this Agreement shall

3

be solely that of independent contractors. Nothing contained herein or any other documents comprising a part hereof shall be deemed to constitute or create a relationship of agency, joint venture, partnership or any relationship other than that as herein specified.

Joint App'x at 37. "[T]he best evidence of what parties to a written agreement intend is what they say in their writing," and this contractual statement is clear indication of an intent to not form a joint venture. Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010) (internal citation omitted).

Galvstar points out that the TPAs were between Harvard and Galvstar, LLC (which operated the steel plant), while the putative oral joint venture agreement was between Harvard and Galvstar Holdings, LLC (the holding company for Galvstar, LLC). However, the same individual--Daniel Bain, "the principal of Galvstar Holdings, LLC"--provided the draft of the February TPA, signed the May TPA, and entered into the alleged oral joint venture agreement with Jacobs. It is implausible that Bain, Harvard, and Jacobs would expressly disclaim a joint venture in a written document, but then go ahead and create one in a side oral agreement.

Galvstar also argues that the TPA has no effect because the February TPA language predates the oral joint venture. But the May TPA came after the alleged oral agreement, and that agreement also disclaims any joint venture. Further, under New York law, all contemporaneous agreements between the same parties relating to the same subject matter are to be read together and interpreted as forming part of one and the same transaction. See Carvel Corp. v. Diversified Mgmt. Grp., Inc., 930 F.2d 228, 233 (2d Cir. 1991).

There are also no allegations plausibly demonstrating an agreement to share in the profits and losses of the alleged joint venture. "An indispensable essential of a contract of partnership or joint venture, both under common law and statutory law, is a mutual promise or undertaking of the parties to share in the profits of the business *and submit to the burden of making good the losses*." Dinaco, Inc. v. Time Warner, Inc., 346 F.3d 64, 68 (2d Cir. 2003) (emphasis in

4

original); see also Steinbeck v. Gerosa, 4 N.Y.2d 302, 317 (1958). Galvstar's own pleadings make clear that the two parties agreed to keep their profits and losses separate. See, e.g., Pl. Compl. at ¶¶ 3, 4, 45. Therefore, we affirm the district court's dismissal of appellants' breach of joint venture claim.

**2.** Galvstar challenges the district court's ruling that it inadequately pled a breach of fiduciary duty claim by Harvard and Jacobs, individually.

To state a claim for breach of fiduciary duty, a plaintiff must plausibly allege facts demonstrating "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." SCS Commc'ns, 360 F.3d at 342. "A fiduciary relationship exists under New York law when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599 (2d Cir. 1991) (internal citation and quotation marks omitted, alteration in original). "Broadly stated, a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another. It is said that the relationship exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed." Penato v. George, 383 N.Y.S.2d 900, 904 (2d Dep't 1976). Fiduciary relationships in New York include "those informal relations which exist whenever one man trusts in, and relies upon, another." Id. at 904-05; see also EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 20 (2005) ("[I]t is fundamental that fiduciary 'liability is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation.'").

Nevertheless, absent an allegation of a special relationship, mere assertions of "trust and confidence" are insufficient to support a claim of a fiduciary relationship. See Freedman v. Pearlman, 706 N.Y.S.2d 405, 409 (1st Dep't 2000). Further, "[w]hen parties deal at arm[']s length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." In re Mid–Island Hosp., Inc., 276 F.3d 123, 130 (2d Cir. 2002) (internal citation and quotation marks omitted). In sum, "[a] fiduciary relationship is necessarily fact-specific and is also grounded in a higher level of trust than normally present in the marketplace

between those involved in arm's length business transactions." Oddo Asset Mgmt. v. Barclays Bank PLC, 19 N.Y.3d 584, 593 (2012) (internal citation and quotation marks omitted). So unless the parties "create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them." Id. (internal citation and quotation marks omitted).

Since there was no joint venture formed between Harvard and Galvstar, any fiduciary duty that Harvard or Jacobs owed to Galvstar must be traced to another source. Appellants cite the intertwined relationship that Harvard had with Galvstar, but even construing the facts alleged in the light most favorable to apellants, the claim is not plausible. The allegations only demonstrate that Harvard had an arm's length purchaser-supplier relationship with Galvstar, and as such, Harvard had an interest in working with Galvstar to ensure that Galvstar produced the quality and quantity of steel in accordance with its needs. The parties' arm's length relationship is reinforced by the language of the TPAs, which disclaimed any formation of a formal or informal relationship between Harvard and Galvstar. Galvstar's allegations thus fail to establish the "extraordinary circumstances" needed to establish a fiduciary relationship between parties dealing at arm's length. See In re Mid-Island Hosp., Inc., 276 F.3d at 130.

Similarly, Galvstar fails to adequately plead any fiduciary duty that Jacobs, as President of Harvard, owed in his individual capacity to Galvstar; there are no specific allegations for why Jacobs owed a duty, other than the conclusory statement that he did. In any event, Galvstar's brief makes clear that Jacobs could not, by himself, make any decisions for Harvard, and there are no allegations that he acted in an individual capacity. Therefore, we affirm the district court's dismissal of appellants' breach of fiduciary duty claim.

**3.** Galvstar argues that the district court improperly found facts in dismissing the implied covenant of good faith and fair dealing claim. We agree.

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the

underlying contract." <u>Harris v. Provident Life & Accident Ins. Co.</u>, 310 F.3d 73, 80 (2d Cir. 2002) (internal citation omitted).   We will "enforce the implied covenant where an implied promise was so interwoven in the whole writing of a contract as to be necessary for effectuation of the purposes of the contract," or "where a party's acts subsequent to performance on the contract so directly destroy the value of the contract for another party that the acts may be presumed to be contrary to the intention of the parties[.]"   <u>M/A-COM Sec. Corp. v. Galesi</u>, 904 F.2d 134, 136 (2d Cir. 1990) (internal citations and quotation marks omitted)(per curiam).   "[H]owever, the implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." <u>Id.</u> (internal citation and quotations marks omitted).

The breach of the implied covenant claimed by Galvstar is that Harvard participated in "a scheme to take over Galvstar," and refused to pay overdue invoices in order to prevent Galvstar from enjoying the benefits of the May TPA, which is the operative agreement between the parties.   Joint App'x at 28.   The district court found that there are insufficient allegations to support a claim that Harvard participated in a scheme to take over Galvstar.   However, taking all of Galvstar's allegations as true, the failure to pay invoices to Galvstar "form[s] an essential link in the chain of events" that deprived Galvstar of the benefits of the TPA, and eventually caused it to fail.   <u>M/A-COM Sec. Corp.</u>, 904 F.2d at 1337. "Integral to a finding of a breach of the implied covenant is a party's action that directly violates an obligation that may be presumed to have been intended by the parties," and the TPA presumes that Harvard would pay invoices due to Galvstar.   <u>Id.</u> at 136.   The district court determined that Harvard's nonpayment was attributable to a dispute over the quality control of steel and a machine failure; but this was not pled by Galvstar, and such fact-finding outside of the allegations is not proper at the motion to dismiss stage.   The district court's conclusion may hold true at the summary judgment stage; at this point, the court must take all nonconclusory allegations pled by Galvstar to be true.

Therefore, we vacate the dismissal of Galvstar's claim for breach of the implied covenant of good faith and fair dealing.

**4.**     Galvstar seeks leave to amend its breach of contract claim, which the district court dismissed.   "We review the denial of leave to amend a complaint for abuse of discretion, unless the denial was based on an interpretation of law, in which case the legal conclusion is reviewed de novo."   Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (internal citation omitted).   Appellants did not seek leave to amend from the district court, as they were free to do, and we will not grant them leave to amend now.   Cf. Gurary v. Nu-Tech Bio-Med, Inc., 303 F.3d 212, 225 (2d Cir. 2002) ("Unless manifest injustice will result from refusing to consider the newly raised issue, it is not properly before this panel."). Galvstar contends that leave to amend was sought in the district court, but Galvstar's counsel merely stated that need to amend "may" arise at some point, and never sought leave to do so.   Joint App'x at 124.

Accordingly, the judgment of the district court is hereby **AFFIRMED IN PART AND VACATED AND REMANDED IN PART**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK